**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
HOME LOAN INVESTMENT BANK, F.S.B.,
f/k/a OCEAN BANK, F.S.B.,

                                   Plaintiff,

            -against-

GOODNESS AND MERCY, INC.; MARY
GILLIAM, HARRIET A. GILLIAM, NEW YORK
STATE DEPARTMENT OF TAXATION &
FINANCE, NEW YORK STATE WORKERS'
COMPENSATION BOARD, THE UNITED
STATES OF AMERICA, CAPITAL ONE BANK
(USA), N.A. and JOHN DOE Nos. 1-100,

                                   Defendants.
--------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
10-CV-4677 (ADS)

APPEARANCES:

**Holland & Knight, L.L.P.**
*Attorneys for the plaintiff*
31 West 52nd Street, 12th Floor
New York, NY 10019
        By:  John Michael Toriello, Esq.
            Patrick J. Sweeney, Esq., Of Counsel

**Law Office of Harriet A. Gilliam**
*Attorney for Goodness & Mercy, Inc., Mary Gilliam & Harriet Gilliam*
P.O. Box 1485
711 Union Avenue
Riverhead, NY 11901
        By:  Harriet A. Gilliam, Esq. *pro se*

NO APPEARANCE
New York State Department of Taxation & Finance
New York State Workers' Compensation Board
The United States of America
Capital One Bank USA, N.A.
John Doe Nos. 1-100

**SPATT, District Judge.**

Plaintiff Home Loan Investment Bank ("Home Loan" or "the Plaintiff") commenced this mortgage foreclosure and deficiency judgment action on August 13, 2010, against Goodness & Mercy, Inc. ("G&M" or "the Corporate Defendant"), Mary Gilliam, and Harriet Gilliam ("the Individual Defendants" and together with G&M "the Defendants") based on the Defendants alleged default under the terms of various agreements securing a Small Business Administration ("SBA") loan in the amount of $525,000. On November 30, 2010, based on the Defendants failure to timely answer or otherwise respond to the complaint, the Plaintiff moved for an entry of default, which was subsequently entered by the Clerk of the Court on December 6, 2010. Presently before the Court is the Defendants' motion pursuant to Federal Rule of Civil Procedure 55 ("Rule 55") to vacate the entry of default. For the reasons discussed below, the Defendants' motion is denied.

## I. BACKGROUND

### A. Factual Background

Plaintiff Home Loan is a national banking association organized and existing under the laws of the United States of America, with its office and principal place of business in Warwick, Rhode Island. On December 15, 2006, defendant Goodness & Mercy, Inc. executed a Small Business Administration Note in favor of Home Loan in the principal amount of $525,000 (the "Note"). In order to secure the loan, G&M also executed: (1) a Mortgage and Security Agreement (the "Mortgage") creating a mortgage lien in favor of Home Loan on two properties—67 East Main Street, Riverhead, New York 11901 (the "Commercial Property") and 23 Midway Drive, Riverhead, New York 11901 (the "Residential Property" and together with the Commercial Property, the "Mortgaged Properties"); and (2) a Security Agreement (the

"Security Agreement") granting a security interest in favor of Home Loan in the collateral defined therein (the "Collateral"). (Compl., ¶¶ 16–18.)

To further secure the loan, defendants Mary Gilliam and Harriet Gilliam, in their personal capacities, each executed an unconditional guarantee (the "Unconditional Guarantees"). Finally, Mary Gilliam also executed a Collateral Mortgage and Security Agreement in favor of Home Loan (the "Collateral Mortgage" and together with the Note, Security Agreement, and Unconditional Guarantees, the "Loan Documents"). (Compl., ¶¶ 19–21.)

Pursuant to the Note, G&M agreed to pay Home Loan monthly installments of principal and interest payments commencing two months after the date of the loan. If G&M failed to make timely payments, Home Loan had the right, without notice or demand, to: (1) require immediate payment of all amount owing under the Note; (2) collect all amounts owing from G&M or Harriet and Mary Gilliam; (3) file suit and obtain judgment; (4) take possession of any Collateral; and (5) sell, lease, or otherwise dispose of any Collateral at public or private sale without advertisement. (Compl., ¶ 25.) Furthermore, under the terms of the Mortgage and Collateral Mortgage, G&M's failure to pay any portion of the debt within ten days of the due date constitutes an event of default, at which time Home Loan has the right to accelerate the debt and to commence and maintain foreclosure proceedings as to the Mortgaged Properties. (Compl., ¶ 26.) Finally, pursuant to the Unconditional Guarantees, in the event that G&M defaulted on the Note, upon written demand, Harriet and Mary Gilliam were required to pay all amounts due under the Note and pay all expenses that Home Loan may incur in enforcing the Unconditional Guarantees. (Compl., ¶ 28.)

According to Home Loan, G&M failed to make the required monthly principal and interest payments due under the Note on March 1, 2010, April 1, 2010, May 1, 2010, June 1,

2010, July 1, 2010, and August 1, 2010 in the amount not less than $543,968.20. On May 19, 2010, Home Loan sent a letter to G&M, Harriet Gilliam, and Mary Gilliam to inform them of the defaults, and that Home Loan was exercising its right to declare the remaining unpaid principal balance of the Note and all other amounts payable under the Loan Documents in the amount of $535,233.90 to be paid no later than June 1, 2009—presumably intended to state June 1, 2010 (the "May 19th Letter"). (Compl., Ex. H.) Also in the May 19th Letter, Home Loan informed G&M, Harriet Gilliam and Mary Gilliam that if the outstanding payments were not made by June 1, 2010, Home Loan would initiate foreclosure proceedings and/or take other actions available to it under the Loan Documents. As indicated above, G&M, Harriet Gilliam, and Mary Gilliam failed to make the required payments, and therefore Home Loan commenced the instant litigation.

**B.  Procedural History**

On August 13, 2010, Home Loan commenced this instant action against G&M, Mary Gilliam, and Harriet Gilliam based on their alleged default under the Loan Documents, seeking a judgment of foreclosure on the Mortgaged Properties, immediate possession of the Collateral, and deficiency judgments against G&M, Harriet Gilliam and Mary Gilliam for:  (1) the unpaid principle amounts under the Loan Documents, unpaid interest, and all late charges, which as of August 4, 2010 amounted to $543,968.20; (2) attorneys' fees, costs, and disbursements, which have accrued and which will continue to accrue until the amount due under the Note and Mortgage are paid in full; and (3) any and all additional fees that are due or may become due and payable as provided under the terms of the Loan Documents until the amount due under the Loan Documents is paid in full.

Also named as defendants were possible judgment creditors or potential holders of tax liens, including the New York State Department of Taxation & Finance; New York State Workers' Compensation Board; and Capital One Bank (USA), N.A. In addition, the United States of America was named as a defendant based on its tax lien on the property of Marion Gilliam. Finally, Home Loan also named certain "Doe Defendants" representing unknown individuals "holding or claiming to hold certain leaseholds, tenancies, sub-tenancies, possessory or other interests, including partnership interests, in and to any judgment or liens upon the Mortgaged Properties, or any portion thereof." (Compl., ¶ 12.)

According to the Affidavit of Service sworn to by William J. Wittenhagen, service on G&M, Harriet Gilliam, and Mary Gilliam was effectuated on October 15, 2010, by leaving a copy of the summons and complaint at the G&M offices located at 67 East Main St., Riverhead, New York 11901, with Ann "Doe", a G&M manager and co-worker of Harriet and Mary Gilliam, who stated that she was authorized to receive service on behalf G&M and Harriet and Mary Gilliam. (See Affidavit of Service, Docket Entry No. 2.) The Affidavit of Service also states that a copy of the summons and complaint was mailed to Harriet and Mary Gilliam on October 18, 2010 at their last known address, which was listed as their "pob" (place of business), 67 East Main Street, Riverhead, New York 11901. It is undisputed that G&M received the summons and complaint that was delivered on October 15, 2010, and therefore G&M's answer was due on November 5, 2010. Less clear is whether Harriet and Mary Gilliam were served consistent with this Affidavit of Service on October 15, 2010. However, neither Harriet or Mary Gilliam contest that they received a copy of the summons and complaint at their home address, 23 Midway Drive, Riverhead, New York 11901, on November 2, 2010. Accordingly, Harriet and Mary Gilliam's answer was due on or about November 23, 2010.

On November 30, 2010, after the Defendants had failed to make an appearance or otherwise answer the complaint, Home Loan moved for an entry of default as against G&M, Harriet Gilliam, and Mary Gilliam. According to Harriet Gilliam, also on November 30, 2010, she contacted counsel for the Plaintiff requesting an extension of time to Answer. However, counsel for the Plaintiff did not get back to Harriet Gilliam until December 3, 2010, when he advised her that he would not consent to an extension of time. Therefore, on December 6, 2010, Harriet Gilliam contacted the Court to request a sixty (60) day extension of time to file an Answer on the grounds that: 1) she had been involved in discussions with one of the Plaintiff's representatives regarding modification of the loan; 2) under New York State Real Property Law the Plaintiff was required to participate in a court ordered settlement conference and had failed to do so; 3) Mary Gilliam was being treated for a medical condition and Harriet Gilliam was her only caretaker; and 4) she was seeking the advice of counsel (the "Extension Letter"). (See Docket Entry No. 7.)

On the same day that the Court received the Extension Letter, the Clerk of the Court entered a notation of default as to G&M, Harriet Gilliam, and Mary Gilliam pursuant to Fed. R. Civ. P. 55(a). In light of the notation of default, this Court denied the requested extension to Answer, without prejudice, and informed the defendants that they may file a motion to vacate the default. (See Docket Entry No. 10.) Accordingly, on December 12, 2010, the Defendants filed the motion to vacate the entry of default that is presently before this Court.

## II. DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Once an entry of default has been

made, the defendant may move to set aside the default entry pursuant to Fed. R. Civ. P. 55(c) for

"good cause shown." Fed. R. Civ. P. 55(c). Where, as here, there has been an entry of default

by the Clerk of the Court, but no default judgment, the Court decides the motion to vacate the

entry of default pursuant to Rule 55(c), which is more lenient than the standard to set aside a

default judgment under Rule 60(b). See Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981)

("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous

than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to

Rule 60(b).").

The question for the Court, then, is whether that Defendant's motion is supported by

good cause; an inquiry that turns on the Court's analysis of three factors. In determining whether

good cause exists to set aside an entry of default, courts should consider: (1) "the willfulness of

the default"; (2) "the existence of a meritorious defense"; and (3) "the level of prejudice that the

non-defaulting party may suffer should relief be granted." Pecarsky v. Galaxiworld.com, Ltd.,

249 F.3d 167, 171 (2d Cir. 2001) (citations omitted). "Other relevant equitable factors may also

be considered, for instance, whether the failure to follow a rule of procedure was a mistake made

in good faith and whether the entry of default would bring about a harsh or unfair result." Enron

Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993).

"It is well established that default judgments are disfavored," and that "[a] clear

preference exists for cases to be adjudicated on the merits." Pecarsky, 249 F.3d at 171 (citations

omitted). Thus, "in ruling on a motion to vacate a default judgment, all doubts must be resolved

in favor of the party seeking relief from the judgment in order to ensure that to the extent

possible, disputes are resolved on their merits." New York v. Green, 420 F.3d 99, 104 (2d Cir.

2005) (citing Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001)).

7

**A. Whether the Defendants Default was "Willful"**

As to willfulness, the first element, a finding of willfulness is appropriate where "there is evidence of bad faith" or the default arose from "egregious or deliberate conduct." Holland v. James, No. 05-CV-5346, 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (quoting Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 60–61 (2d Cir. 1996)). Courts should "resolve any doubt about [the Defendants'] willfulness in [their] favor." Raheim v. New York City Health and Hosps. Corp., No. 96-CV-1045, 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007) (citing Enron, 10 F.3d at 98). In addition, the Court bears in mind that "[w]hile courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." Meehan, 652 F.2d at 277; see also Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 319 (2d Cir. 1986) ("[D]istrict courts regularly exercise their discretion to deny technically valid motions for default.").

Here, the Court finds that the Defendants' have not proffered any arguments justifying or excusing their default. Harriet Gilliam is an attorney and is representing herself, Mary Gilliam, and G&M. She does not purport to be unfamiliar with the Federal Rules of Civil Procedure, nor does she contend that her failure to submit a timely answer was accidental or negligent. Indeed, through her submission of the Extension Letter, Harriet Gilliam demonstrated that she was aware of her obligation to file an answer, and admitted that she desired additional time to answer not because she felt any of the circumstances indicated the Defendants answer was not due, but because a timely answer would be unnecessary in light of the loan modification discussions and difficulty presented by Mary Gilliam's illness. The Court further notes that, regardless of which

date of service the Court recognizes, the request for an extension was received at least a week after a response to the complaint was due.

In their submission on the instant motion, the Defendants make a new argument not included in the Extension Letter, namely that service on the Corporate Defendant was improper, and therefore their default should be excused because even an erroneous belief with regard to improper service has been held to excuse a default. This argument is unpersuasive for two reasons. First, even accepting the Defendants contention as true, improper service on the Corporate Defendant would only excuse the Corporate Defendant's default, and not the defaults of Harriet and Mary Gilliam. Although Harriet and Mary Gilliam question the credibility of the Affidavit of Service, it is undisputed that they received the summons and complaint on November 2, 2010, and did not answer or otherwise appear in this litigation until one week later when they sent the Extension Letter. Second, and more importantly, whether service on the Corporate Defendant was improper—which the Court discusses in greater detail infra when addressing the Defendants' purported meritorious defenses—will only constitute a valid excuse for a default if the reason that the Defendants did not answer or otherwise respond to the complaint was because they thought that the improper service rendered a response unnecessary. See, e.g., Westvaco Corp. v. Viva Magnetics Ltd., No. 00-CV-9399, 2002 WL 1683454, at *2 (S.D.N.Y. July 24, 2002) (holding that the defendant's belief "that service had not been properly effected and that it was not, therefore, required to respond to the Complaint" constituted a reasonable explanation of its delay). Here, the Extension Letter made no reference to improper service on G&M as grounds for the failure to answer, and an after the fact assertion that such a belief was held lacks credibility.

Furthermore, while the fact that the parties were corresponding with regard to modifying the loan may have been a reasonable ground upon which to grant an extension of the Defendants time to answer, it does not excuse the failure to answer. There is no indication that the Plaintiff, or one of Plaintiff's representatives, told the Defendants that the instant proceedings were stayed pending the resolution of their discussions, and such an argument would be belied by the fact that the Defendants sought an extension from the Plaintiff to answer. Cf. State Farm Mut. Auto. Ins. Co. v. Cohan, No. 10-CV-1361, 2011 WL 386786, at *1 (2d Cir. Feb. 8, 2011) ("Defendants suggest that State Farm led them to believe that no responsive pleading was necessary because the case would be resolved informally. The district court was not required to credit that claim. The parties only discussed settlement on one occasion, and State Farm consistently pursued a default judgment. We cannot say on these facts that the district court committed error in finding that the default was willful."); but see United States v. Estrada, No. 04-CV-5008, 2006 WL 3050886, at *1 (E.D.N.Y. Oct. 20, 2006) ("In her submission, Defendant admits that 'demand was made upon her as of May 2005' but contends she has not refused to pay. Rather she has attempted to settle the matter with Plaintiff's counsel. Generously construed, this supports a finding that Defendant's default was not willful.").

Furthermore, the Defendants contend that their default was not willful because Mary Gilliam has been ill and Harriet Gilliam is her primary caretaker. Notably, the Defendants do not contend that Mary Gilliam's illness led them to inadvertently miss the deadline to respond, or somehow prevented them from seeking an extension prior to the date that a response was due. Generally, making all inferences in favor of the Defendants, Mary Gilliam's illness and the relatively short delay between the default and the Defendants' letter to the Court seeking an extension of time to answer would result in a finding that the default was not willful. Cyril v.

Neighborhood P'ship II Housing Dev. Fund, Inc., 124 Fed. App'x. 26, 27 (2d Cir. 2005) ("As to Neighborhood Partnership, the District Court did not abuse its discretion in finding that the default was not wi[l]lful, as demonstrated by counsel's diligence after a slight delay due to illness."); Wharton v. Nassau County, No. 10-CV-265, 2010 WL 4878998, at *2 (E.D.N.Y. Nov. 22, 2010) ("Even without considering whether service was proper or whether the parties' alleged stipulation was effective, the worst that can be said about Defendants' behavior is that they missed a deadline and then, without prompting by Plaintiff, corrected their mistake by filing an Answer after a relatively short delay. Such conduct is arguably careless, but it does not rise to the level of willfulness required for a default judgment."); but see Willis v. Landamerica Onestop, Inc., No. 07-CV-3646, 2009 WL 2474624, at *2 (S.D.N.Y. Aug. 13, 2009) ("The Rovegnos' explanation for their failure to respond to the initial complaint-that they were overborne by emotional and financial strife-is not persuasive. Emotional and financial strife, without more, do not excuse the deliberate default of a properly served party. Accordingly, I conclude that the Rovegnos' default was willful.").

However, despite the short delay, the Defendants actions subsequent to the default lead the Court to question whether the Defendants' default was truly a careless error or a calculated attempt to further delay the resolution of this matter. In particular, the Plaintiff contends that, after the Defendants filed the present motion, the Plaintiff contacted the Defendants to see if the Defendants would be willing to coordinate the submission of a late answer and proceed to the merits of the case and avoid the costs of the instant motion practice. (See 12/22/10 letter from Patrick Sweeney to Harriet Gilliam attached to the Declaration of Patrick Sweeny in Opposition to Motion to Vacate.) According to the Plaintiff, it never received a response to this offer, and the Court notes that the Defendants did not file a reply brief disputing the Plaintiff's

characterization of this correspondence.  The Plaintiff contends that the Defendants rejection of

its offer for an extension of time to answer is further evidence that the Defendants have defaulted

in bad faith and have no intent to litigate the instant dispute.  The Court agrees.

Although the Defendants relatively minor delay in seeking an extension to respond does

not constitute "egregious conduct," the fact that the Defendants, fully aware of their obligation to

answer, not only sought an extension after their answer due, but also rejected an offer by the

Plaintiff to coordinate the submission of a late answer and thereby avoid wasting the parties, and

the Court's, resources in litigating the instant motion, cannot be characterized as anything other

than willful conduct and bad faith.  However, even if the Court were to credit Mary Gilliam's

illness as the cause of the delay, and find that the default was not willful, because the Court

ultimately finds that the Defendants have not put forth a meritorious defense, a finding that the

default was not willful would not support vacating the entry of default.

## B.  Whether the Defendants have established a Meritorious Defense

The second factor for the Court to consider is whether the Defendants have shown the

existence of a meritorious defense.  "To satisfy the criterion of a 'meritorious defense,' the

defense need not be ultimately persuasive at this stage.  A defense is meritorious if it is good at

law so as to give the factfinder some determination to make."  Am. Alliance Ins. Co., Ltd. v.

Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (quoting Anilina Fabrique de Colorants v. Aakash

Chems. and Dyestuffs, Inc., 856 F.2d 873, 879 (7th Cir. 1988)).  In order to proffer a

"meritorious defense," a "defendant seeking to vacate an entry of default must present some

evidence beyond conclusory denials to support his defense."  Enron, 10 F.3d at 98.  For example,

in the context of a motion to vacate a default, a defense that the parties were properly paid

constitutes a "meritorious defense." See Franco v. Ideal Mortg. Bankers, Ltd., No. 07-CV-3956, 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010).

As an initial matter, the Defendants contend that this Court lacks personal jurisdiction over G&M because G&M was not properly served with the summons and complaint. In particular, the Defendants argue that service was improper because there is no indication that the process server served the Secretary of State or served the officers of the corporation. Before the Court may properly enter a default judgment, it must ensure that it has jurisdiction over the party against whom judgment is sought, which also means that the party must have been effectively served with process. See Williams v. Bernard, No. 05-CV-3202, 2007 WL 2455175, at *5 (E.D.N.Y. Aug. 23, 2007) (quoting Copelco Capital, Inc. v. General Consel of Bol., 940 F. Supp. 93, 94 (S.D.N.Y. 1996)); Polygram Merch., v. N.Y. Wholesale Co., No. 97-CV-6489, 2000 WL 23287, at *1 (S.D.N.Y. Jan. 13, 2000) ("Proper service provides the hallmark of due process and therefore a judgment obtained by defective service is void and must be vacated.").

Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, service is governed by the laws of the state in which the court sits. Under New York law, service of process on a corporation is governed by New York Civil Practice Law and Rules § 311 which provides that personal service upon a corporation "shall be made by delivering the summons . . . to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or law to receive service." N.Y. CPLR § 311(a)(1) (emphasis added). CPLR § 311 further provides that "[a] business corporation may also be served pursuant to [§ 306 or § 307] of the business corporation law." Id. (emphasis added). New York Business Corporation Law § 306 ("B.C.L. § 306") in turn states that the Secretary of State for the State of

New York can serve as the agent for service of process on a domestic or authorized foreign corporation.  N.Y. B.C.L. § 306(b)(1).

When read together, in order to properly serve a corporation under New York law, a party must serve an authorized agent of the corporation, who is either among those individuals listed in CPLR § 311, or, pursuant to B.C.L. § 306(b)(1), the Secretary of State.  Thus, unless G&M designated the Secretary of State or an officer of the corporation as the only agents eligible to receive service of process on their behalf, <u>see</u> N.Y. C.P.L.R. § 318, personal service on an authorized agent as defined in CPLR § 311 is sufficient.  Accordingly, the fact that service on G&M was not effectuated on an officer of the company or the Secretary of State, does not constitute a meritorious defense.

Furthermore, the Affidavit of Service indicates that, on October 15, 2010, the process server left a copy of the summons and complaint with "Ann 'Doe' Manager", who indicated that she was authorized to accept service on behalf of the corporation.  The Defendants do not dispute that "Ann Doe" was authorized to accept service on behalf of G&M, and it is well-established that, under New York law, "[a]n affidavit of service constitutes prima facie evidence of effective service."  <u>Polygram</u>, 2000 WL 23287, at *2.  The Defendants attempt to call into question the validity of the Affidavit of Service because it states that a copy of the summons and complaint was mailed to the Individual Defendants on October 18, 2010, which contradicts the fact that they received the summons and complaint on November 2, 2010.  However, the Affidavit of Service indicates that the copy of the summons and complaint was mailed to the Individual Defendants place of business on October 18, 2010, and lists the address of the Commercial Property.  The copy received on November 2, 2010 was received at the Individual Defendants' personal residence.

Even accepting as true that there is a discrepancy in the Affidavit of Service, because the Defendants do not deny that a copy of the summons and complaint was received by "Ann Doe", or that "Ann Doe" was an authorized agent to receive service, such a discrepancy does not warrant a finding that the Court lacks jurisdiction over G&M. Cf. Cablevision Systems New York City Corp. v. Okolo, 197 Fed. App'x. 61, 62 (2d Cir. 2006) ("His references to minor discrepancies between the description of the recipient of the complaint, as set forth in the process server's affidavit, and his own description of his wife, do not support a finding that service was defective."). Therefore, "in the absence of contrary facts, [the Court can] presume that [G&M] was properly served with the complaint." Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002); cf. National Heritage Life Ins. Co. v. T.J. Properties Co., 286 A.D.2d 715, 730 N.Y.S.2d 163 (2d Dep't 2001) (remanding for a hearing on the issue of service where it was unclear whether the person who was served was authorized to receive service for the corporation).

Next, the Defendants contend that the conduct of the Plaintiff's representative in corresponding with the Defendants about a possible loan modification and their eligibility for a program that would allow them to keep their Residential Property may have resulted in the Plaintiff waiving its right to enforce the Loan Documents and obtain the recovery it seeks in this litigation. Notably, the Defendants set forth no proof that the Plaintiff has made any such representation during their negotiations, nor do they contend that pursuant to the Loan Documents or the applicable laws, discussions of possible loan modifications are equivalent to the Plaintiff waiving or agreeing to forbear any of its rights under the Loan Documents.

Although the Court is required to make all inferences in favor of the non-moving party, conclusory allegations that the Plaintiff has waived its rights under the Loan Documents, without

more, does not constitute "credible evidence of facts that, if proven at trial, would constitute a complete defense." Travelers Indem. Co. v. Kabir, 368 Fed. App'x 209, 210 (2d Cir. 2010) (emphasis added) (citing State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 167 (2d Cir. 2004)); see also Badian v. Elliott, 165 Fed. App'x 886, 892 (2d Cir. 2006) (affirming district court's denial of motion to vacate a default where the defendant's meritorious defense to a breach of contract action for fraudulent transfers was that he had "legitimate business reasons for these transfers," but the court found that the defendant "proffer[ed] no facts that, if proved at trial, could demonstrate that the transfer of [assets] . . . had a legitimate business purpose other than to defraud BAC's creditors generally and Badian in particular"); United States v. Medley, 13 Fed. App'x 58, 59 (2d Cir. 2001) ("Medley conceded that she took out the loan and failed to repay it, and that she received the plaintiff's Complaint but was too busy to respond. Medley's conclusory allegations of fraud on the part of the school she attended do not excuse her nonpayment on the student loan, which was a debt owed to the government, not to the school.").

By contrast, the Plaintiff points to the plain language of the Mortgage, which provides in pertinent part that:

> This Mortgage and all other Loan Documents contain the entire agreement between the parties hereto and cannot be changed, amended, modified or revised in any manner whatsoever, except by another instrument in writing duly executed by the parties hereto.

(Compl., Ex. C ("Mortgage") ¶ 3.4.) Consistent with New York contract and statutory law, "any forbearance discussed by the parties is not enforceable absent a writing signed by [the Plaintiff], as required by the mortgage and by the statute of frauds" and therefore the Defendants conclusory allegation that the Plaintiff has waived their rights under the Loan Documents does

not constitute a meritorious defense sufficient to warrant the Court vacating the entry of default. North Bright Capital, LLC v. 705 Flatbush Realty, LLC, 66 A.D.3d 977 (2d Dep't 2009); see also Federal Home Loan Mortg. Corp. v. Ambassador Associates, L.P., No. 05-CV-6546, 2006 WL 2873641, at *4 (W.D.N.Y. Oct. 6, 2006) ("Here, paragraph 21 of the Mortgage is clear and unambiguous that the remedies afforded to plaintiff are cumulative. Thus, these remedies can be exercised together and the exercise of one of them neither constitutes a waiver of the other remedies nor precludes exercising them concurrently.").

In addition, the Defendants assert that the fact that the May 19th demand letter included a typographic error demanding payment by June 1, 2009 as opposed to June 1, 2010 constitutes a meritorious defense. Again, the Defendants do not provide any support for the contention that an obvious typographic error otherwise excuses their default or effects the Plaintiff's right to maintain the present action under the Loan Documents. Moreover, as the Plaintiff points out, whether a clerical error in the May 19th letter constituted insufficient notice is irrelevant insofar as the Plaintiff was not required under the Loan Documents or any relevant law, to give the Defendants notice before accelerating the debt and seeking a foreclosure on the property based on a failure to make scheduled payments under the Note. (See Mortgage ¶¶ 3.2 & 2.1); see also Independence Cmty. Bank v. Omicron Indus., Inc., 9 Misc.3d 1119(A), 808 N.Y.S.2d 918 (Table), 2005 WL 2674934, at *2 (N.Y. Sup. Ct. Suffolk Cnty. July 21, 2005) (noting that under New York law, "[w]here the mortgage documents do not require written notice of default prior to commencement of foreclosure, no notice of default is necessary").

Finally, the Defendants identify what they contend to be several procedural irregularities, such as the facts that the Small Business Administration is not involved in the lawsuit and the Plaintiff erroneously names the United States of America as a defendant based on an IRS lien

against Marion Gilliam, who is not a party to this action. The Defendants have failed to explain how these alleged deficiencies refute or otherwise impact the claims against them. See State Farm Mut. Auto. Ins. Co. v. Cohan, 09-CV-2990, 2010 WL 890975, at *4 (E.D.N.Y. March 8, 2010) ("Indeed, the statute of limitations defense, without any evidence beyond the conclusory allegation in the Second Answer, may be insufficient to support vacating an entry of default."). Furthermore, the procedural irregularities do not satisfy the requirement that a meritorious defense constitute a complete defense to the merits of the claim. See 1st Bridge LLC v. 682 Jamaica Ave., LLC, No. 08-CV-3401, 2009 WL 301941, at *1 (E.D.N.Y. Feb. 6, 2009) ("Although they claim that Plaintiff is not entitled to a default judgment because of several alleged procedural irregularities, Defendants have not put forth any defense on the merits of Plaintiff's complaint."); cf. Federal Home Loan Mortg. Corp. v. 2001 Concourse Realty, Inc., No. 94-CV-586, 1996 WL 671199, at *1 (S.D.N.Y. Nov. 20, 1996) (granting plaintiff summary judgment motion in a foreclosure action where it was undisputed that the defendant failed to make the installment payments or other payments due under a mortgage because "[d]efendants' factual contentions [were] not material to the foreclosure issue because, even if true, they do not establish a valid defense to foreclosure").

The Second Circuit has held that a defendant "'must present more than conclusory denials when attempting to show the existence of a meritorious defense.'" New York v. Green, 420 F.3d at 110 (quoting Pecarsky, 249 F.3d at 173). However, here, the Defendants have not set forth any denials. The Defendants do not deny that they have defaulted on their obligations under the Loan Documents nor have they provided any meritorious defense—e.g., denial of the assumption and agreement to pay; partial payment; statute of limitations; usury or fraud—"which alone is sufficient to deny a motion to vacate a default judgment." Fashion Shop LLC v. Virtual

Sales Group Corp., 525 F. Supp. 2d 436, 447 (S.D.N.Y. 2007); see also United States v. Estrada, No. 04-CV-5008, 2006 WL 3050886, at *1 (E.D.N.Y. Oct. 20, 2006) (denying a motion to vacate a default in a student loan case for a lack of meritorious defense where the defendant admitted that she had taken out a loan and that she had not paid it back, and further finding that any dispute as to the amount owed did not warrant vacatur but rather could be addressed on inquest); United States v. Riser, No. 10-CV-4550, 2011 WL 1004566, at *3 (E.D.N.Y. March 16, 2011) (denying a motion to vacate a default judgment where "neither Defendant's affidavit nor his answer set forth the basis for his contention that he does not owe the amount listed in the judgment"). Accordingly, the Defendants' lack of meritorious defense weighs against vacating the entry of default.

## C.  Whether Home Loan will be Prejudiced by Vacating the Default

The third factor for the Court's consideration is whether the party who has obtained the entry of default would be prejudiced if the Court granted the motion to vacate. However, where, as here, "it is established that Defendants lack a meritorious defense and that their default was willful, no prejudice is required to be shown." 1st Bridge LLC v. 682 Jamaica Ave., LLC, No. 08-CV-3401, 2009 WL 301941, at *2 n.2 (E.D.N.Y. Feb. 06, 2009) (citing Comm'l Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 244 (2d Cir. 1994)). Thus, consideration of this factor is unnecessary in light of the Court's finding that the Defendants lack a meritorious defense.

## D.  Whether the Interests of Justice Weigh in Favor of Vacating the Default

The final factor for the Court's consideration is whether the interests of justice require vacating the default in order to avoid a harsh or unfair result. The Defendants contend that, by filing this action in federal court as opposed to state court, the Plaintiff has unfairly avoided a procedural process aimed at enabling individuals to avoid foreclosure on their homes. In

addition, the Defendants argue that foreclosure is too harsh a judgment to be determined on default, that there are unnamed bankruptcy and Small Business Administration issues that they have not had an opportunity to develop, and that the Court should be lenient in light of Mary Gilliam's illness and Harriet Gilliam's role as her caretaker. As set forth below, none of these potential interests of justice outweigh the fact that the Defendants have failed to set forth a meritorious defense.

Because the default judgment may result in the foreclosure on the Residential Property, which is the primary residence of both Mary and Harriet Gilliam, the Defendants argue that if the Plaintiff had commenced this litigation in state court, they would have been subject to mandatory settlement discussions, as set forth in N.Y. CPLR § 3408, and other procedural safeguards to prevent the unlawful or unnecessary foreclosure on residential property. Thus, the Defendants contend that by filing this case in federal court, the Plaintiff has unfairly circumvented these safeguards. As a result, the Defendants state that the interests of justice require vacating the default and requiring the Plaintiff to comply with these requirements before a default judgment can be entered.

N.Y. CPLR § 3408, states in relevant part that:

> In any residential foreclosure action involving a home loan as such term is defined in section thirteen hundred four of the real property actions and proceedings law, in which the defendant is a resident of the property subject to foreclosure, the court shall hold a mandatory conference within sixty days after the date when proof of service is filed with the county clerk, or on such adjourned date as has been agreed to by the parties, for the purpose of holding settlement discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents, including, but not limited to determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution

20

> in which payment schedules or amounts may be modified or other
> workout options may be agreed to, and for whatever other
> purposes the court deems appropriate.

N.Y. CPLR § 3408(a). Section 3408 further provides that, at this conference, "[b]oth the plaintiff and defendant shall negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible." N.Y. CPLR § 3408(f). However, as the Plaintiff correctly notes, the requirements of CPLR § 3408 are only applicable to residential "home loans." Where, as here, the residential property subject to foreclosure was pledged as collateral to secure a commercial loan, the parties are not bound by CPLR § 3408. See N.Y. Real Property Actions and Proceedings Law § 1304(5)(a)(ii) (defining "home loan" to include only those loans where "[t]he debt is incurred by the borrower primarily for personal, family, or household purposes"); Eastern Savings Bank, FSB v. Aguirre, 30 Misc.3d 1230(A), 2011 WL 723595, at *8 (N.Y. Sup. Ct. Queens Co. Feb. 4, 2011) (holding that CPLR § 3408 was inapplicable where "the mortgage loans were not incurred primarily for personal family or household purposes, but rather to finance the commercial construction project").

Furthermore, even if CPLR § 3408 was applicable to the instant action, the Honorable Mark C. Dillon, Justice of the Appellate Division of the New York State Supreme Court, Second Judicial Department, has recently noted that "it is unlikely that the inadvertent failure of a court to offer a settlement conference under CPLR 3408 affords a defaulted defendant any practical relief" because, although "[d]efenses, meritorious or otherwise, may be discussed at settlement conferences. . . . the absence of a conference itself is irrelevant to whether the defendant independently possesses a meritorious defense to a foreclosure action." See Hon. Mark C. Dillon, The Newly-Enacted CPLR 3408 For Easing The Mortgage Foreclosure Crisis: Very Good Steps, But Not Legislatively Perfect, 30 Pace L. Rev. 855, 885 (2010).

Finally, the additional equitable considerations proffered by the Defendants, including vague references to bankruptcy, the Small Business Administration, and the personal health challenges of Mary Gilliam, similarly do not weigh in favor of vacating the default in light of the lack of meritorious defense. To the extent that Mary Gilliam's illness will impact the Defendants ability to participate in the inquest, the Defendants may raise this issue with the United States Magistrate Judge assigned to conduct the inquest. Although the Court is aware of the hardship the Defendants might face from a foreclosure on their home, "[w]hen a default is undisputed, the court '(cannot) abrogate the right of foreclosure and sale . . . which is incorporated in the contract and on the strength of which (the creditor) lent his money." United States v. Victory Highway Village, Inc., 662 F.2d 488, 494 (8th Cir. 1981) (quoting United States v. Sylacauga Properties, Inc., 323 F.2d 487, 491 (5th Cir. 1963)); accord United States v. Flaherty, 172 F.3d 39, 1999 WL 66153 (2d Cir 1999).

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motion to vacate the entry of default pursuant to Federal Rule of Civil Procedure 55 is denied, and it is further

**ORDERED**, that the Court enters a default against G&M, Harriet Gilliam, and Mary Gilliam, and it is further

**ORDERED**, that the Clerk of the Court is directed to randomly assign a United States Magistrate Judge to this case from the Long Island referral wheel; and it is further

**ORDERED**, that the parties are directed to report to the assigned United States Magistrate Judge for an inquest as to damages, including reasonable attorneys' fees and costs and any other additional relief, and it is further

22

**ORDERED**, that the Clerk of the Court is to note this referral.

**SO ORDERED**.
Dated: Central Islip, New York
April 30, 2011

_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge