UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
HOME LOAN INVESTMENT BANK, F.S.B., f/k/a
OCEAN BANK, F.S.B.,

                        Plaintiff,                            REPORT AND
                                                               RECOMMENDATION
   -against-

                                                                CV 10-4677 (ADS) (ETB)

GOODNESS & MERCY, INC., MARY GILLIAM,
HARRIET A. GILLIAM, NEW YORK STATE
DEPARTMENT OF TAXATION & FINANCE, NEW
YORK STATE WORKERS' COMPENSATION
BOARD, THE UNITED STATES OF AMERICA,
CAPITAL ONE BANK (USA), N.A. and JOHN DOE
Nos. 1-100,

                        Defendants.
----------------------------------------------------------------------x

TO THE HONORABLE ARTHUR D. SPATT, United States District Judge:

       Plaintiff commenced the within action on October 13, 2010, seeking to foreclose a mortgage on two parcels of real property located in Riverhead, New York. Defendants failed to appear in the action and a notation of default was entered against them on April 30, 2011. Plaintiff seeks $509,460.35 in principal due and owing under the mortgage, as well as interest, late fees, miscellaneous fees, escrow fees and attorney's fees and costs. For the following reasons, I recommend that a default judgment be entered against defendants and that plaintiff be awarded damages in the amount of $618,847.27, plus additional interest and late fees to be calculated through the date of judgment entered herein.

FACTS

On December 15, 2006, defendant Goodness & Mercy, Inc. ("G&M") executed a Small Business Administration loan in favor of plaintiff, Home Loan Investment Bank, F.S.B. ("Home Loan"), in the principal amount of $525,000.00 (the "Note"). (Pl. Ex. 1.) In order to secure the loan, G&M also executed the following: (1) a mortgage and security agreement (the "Mortgage") creating a mortgage lien in favor of Home Loan on two properties located in Riverhead, New York (the "Mortgaged Properties"); and (2) a Security Agreement (the "Security Agreement") granting a security interest in favor of Home Loan in the collateral defined therein (the "Collateral"). (Pl. Ex. 2.) To further secure the loan, defendants Mary Gilliam and Harriet Gilliam, in their personal capacities, each executed an unconditional guarantee (the "Unconditional Guarantee"). (Compl. Ex. F; Compl. Ex. G.) Mary Gilliam also executed a collateral mortgage and security agreement on her personal possessions in favor of Home Loan (the "Collateral Mortgage," and collectively with the Note, Security Agreement, and Unconditional Guarantees, the "Loan Documents"). (Pl. Ex. 3.)

Pursuant to the Note, G&M agreed to pay Home Loan monthly installments consisting of both principal and interest commencing on February 1, 2007. (Pl. Ex. 1.) If G&M failed to make timely payments, Home Loan had the right, without notice or demand, to: (1) require immediate payment of all amounts due under the Note; (2) collect all amounts owed from G&M or Harriet and Mary Gilliam; (3) file suit and obtain judgment; (4) take possession of any Collateral; and (5) sell, lease, or otherwise dispose of any Collateral at public or private sale without advertisement. (Pl. Ex. 1 §5.) Under the terms of the Mortgage and Collateral Mortgage, G&M's failure to pay any portion of the debt within ten days of the due date

constituted default, at which time Home Loan had the right to accelerate the debt and to commence and maintain foreclosure proceedings on the Mortgaged Properties. (Pl. Ex. 2 §2.1-2.2; Pl. Ex. 3 ¶23.) Pursuant to the Unconditional Guarantees, in the event that G&M defaulted on the Note, upon writtend demand, Harriet and Mary Gilliam were required to pay all amounts due and owing under the Note and pay all expenses that Home Loan might incur in enforcing the Unconditional Guarantees. (Compl. Ex. F §1; Compl. Ex. G §1.)

G&M failed to make the required monthly principal and interest payments due under the Note. (Pl. Ex. 4.) On May 19, 2010, Home Loan sent a letter to each of the defendants informing them of the default, and further advising that Home Loan was exercising its right to declare the remaining unpaid principal balance of the Note, as well as all other amounts payable under the Loan Documents, to be due no later than June 1, 2010.[1] (Compl. Ex. H.) Home Loan also informed the defendants that if the outstanding payments were not received by June 1, 2010, Home Loan would initiate foreclosure proceedings or take other actions available to it under the Loan Documents. (Compl. Ex. H.) Defendants failed to make the required payments.

On October 13, 2010, Home Loan commenced the instant action against defendants based on their alleged default under the Loan Documents, seeking a judgment of foreclosure on the Mortgaged Properties, immediate possession of the Collateral, and deficiency judgments against G&M, Mary Gilliam and Harriet Gilliam for: (1) the unpaid principal amount due under the Loan Documents, unpaid interest, and all late charges; (2) attorney's fees, costs, and disbursements; and (3) any and all additional fees that are due or may become due and payable as provided under

---

[1] The May 19, 2010 letter states that the outstanding amounts are to be paid no later than "June 1, 2009." The Court treats this as a typographical error.

the terms of the Loan Documents.[2]

Defendants failed to answer the Complaint or otherwise appear in this action. On November 30, 2010, Home Loan moved for an entry of default against defendants. On December 6, 2010, defendants requested an extension of time to file an Answer. That same day, the Clerk of the Court entered a notation of default as to G&M, Harriet Gilliam, and Mary Gilliam, pursuant to Federal Rule of Civil Procedure 55(a). Judge Spatt denied the defendants' request for an extension of time to answer, but advised the defendants that they could file a motion to vacate the default. (Order of Spatt, J., dated Dec. 7, 2010). Defendants filed a motion to vacate the entry of default on December 9, 2010.

Judge Spatt denied the defendants' motion to vacate the entry of default on April 30, 2011. (Order of Spatt, J., dated Apr. 30, 2011.) By that same Order, Judge Spatt entered a notation of default against G&M, Harriet Gilliam, and Mary Gilliam, and referred the matter to the undersigned for an inquest with respect to damages. (Id.)

An inquest was held before the undersigned on August 9, 2011. During the hearing, the plaintiff called Mr. Peter St. Jean, the commercial loan manager for Home Loan who is responsible for the collection of business loans that are in delinquency. (Tr. 9-11.) Mr. St. Jean testified that the following amounts are due and owing by defendants: (1) a principal balance of

---

[2] Also named as defendants were possible judgment creditors or potential holders of tax liens, including the New York State Department of Taxation & Finance, New York State Workers' Compensation Board, and Capital One Bank (USA), NA. (Compl. ¶ 8-9, 11.) The United States was also named as a defendant based on its tax lien on the property of Marion Gilliam. (Compl. ¶ 10.) 100 "Doe Defendants" representing unknown individuals "holding or claiming to hold certain leaseholds, tenancies, sub-tenancies, possessory or other interests, including partnership interests, in and to any judgment or liens upon the Mortgaged Properties, or any portion thereof" were also named as defendants. (Compl.¶ 12.) The Court has entered a default solely against G&M, Harriet Gilliam, and Mary Gilliam.

$509,460.35; (2) interest in the amount of $37,787.99, as of August 4, 2011; (3) late fees of $7,488.89, as of August 4, 2011; (4) assorted miscellaneous fees of $44,505.46;[3] and (5) escrow fees of $25,343.65.  (Id.)

During the cross-examination of Mr. St. Jean, counsel for defendants questioned him concerning a payment made by the defendants to the plaintiff on July 21, 2009 in the amount of $42,680.00.  (Tr. 45-48.)  Mr. St. Jean testified that the payment was not applied to any late or miscellaneous fees accumulated on the Loan, but rather first, to interest owed and second, to the principal, in accordance with the provisions of the Note.  (Tr. 46-47; See Pl. Ex. 1 §3.)  Mr. St. Jean further testified that, contrary to defendants' assertions, he did not recall having a discussion about waiving late fees in connection with this payment, as such a waiver is not standard protocol.  (Id.)  Defendants requested that Mr. St Jean produce any notes he may have with regard to any conversation that took place between him and defendants concerning this payment.  (Tr. 47.)  Counsel for plaintiff objected to defendants' request.  (Tr. 47.)  The Court reserved decision and provided the parties an opportunity to brief the issue following the inquest.  (Tr. 48.)

DISCUSSION

I.   Legal Standard

When a party fails to appear or defend an action by an adverse party, a default may be entered against the non-appearing party.  See Fed. R. Civ. P. 55.  After entry of the default, "a defendant is deemed to have admitted all of the well-pleaded allegations raised in the complaint

---

[3] Although plaintiff combines attorney's fees, costs, and miscellaneous fees in one category, the Court has separated them into individual categories for clarity, as discussed infra.

pertaining to liability." Time Warner Cable of N.Y. v. Rivera, No. 99-2339, 1995 WL 362429, at *2 (E.D.N.Y. June 8, 1995); see also Time Warner Cable of N.Y. v. Barbosa, No. 98-3522, 2001 WL 118606, at *5 (S.D.N.Y. Jan. 2, 2001) (quoting Transworld Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971)). Damages, however, must be proven, usually "at an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed." Rivera, 1995 WL 362429, at *2 (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1993)).

II. Damages

As of August 4, 2011, plaintiff seeks damages in the amount of $581,439.88, which consists of: (1) $509,460.35 in principal; (2) $37,787.99 in interest; (3) $7,488.89 in late fees; (4) $25,343.65 in escrow fees and; (5) $1,359 in miscellaneous fees. Plaintiff also seeks its attorney's fees and costs incurred in connection with this action.

    A.    Principal

Plaintiff's witness, Peter St. Jean, testified that the principal balance due and owing under the Note is $509,460.35. (Tr. 12.) Defendants argue that a greater portion of the July 21, 2009 payment of $42,680.00 should have been applied to the principal, thereby lowering the outstanding principal owed. (Def. Mem. at p. 3.) Mr. St. Jean testified that the $42,680.00 payment, in accord with plaintiff's standard practices, was applied first, to interest owed and second, to the principal. (Tr. 46-47.) Section 3 of the Note states that the "Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to

reduce principal." (Pl. Ex. 1.) The testimony by Mr. St. Jean confirms that this is what plaintiff did.

Accordingly, I recommend that plaintiff be granted damages in the amount of $509,460.35, which reflects the amount of principal due and owing by defendants.

B. <u>Interest</u>

Mr. St. Jean also testified that interest was to be calculated at a variable rate equal to two and one half percent (2.5%) above the Prime Rate as published in The Wall Street Journal. (Tr. 31, 88.) He testified that he calculated simple interest on the principal balance. (Tr. 12.) Interest continues to accrue at a rate of $80.26 per day. (Pl. Am. Statement of Damages 2.)

Based on Mr. St. Jean's calculations, G&M, Harriet Gilliam, and Mary Gilliam are liable for $37,787.99 in interest as of August 4, 2011. Defendants contest this amount, claiming that due to the July 21, 2009 payment of $42,680.00, late and miscellaneous fees were waived, and hence the interest calculations are erroneous. (Def. Mem. at pp. 3-4.) There is no documentary evidence to support such a waiver. As a result, defendants' argument relies on an oral modification of the Note.

Section 9E of the Note states that "Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note." (Pl. Ex. 1 §9E.) A party can only overcome a no-oral-modification clause by showing either partial performance or equitable estoppel. See <u>United States v. Schwimmer</u>, 968 F.2d 1570, 1575 (2d Cir.1992). To rely on the partial performance exception, "that partial performance must be 'unequivocally referable' to the new contract." <u>Merrill Lynch Interfunding v. Argenti</u>, 155 F.3d 113, 122 (2d Cir.1998) (quoting <u>Rose v. Spa Realty Associates</u>, 42 N.Y.2d 338, 397 N.Y.S.2d 922, 366 N.E.2d 1279, 1283

(1977)). In other words, "the actions alone must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement." Anostario v. Vicinanzo, 59 N.Y.2d 662, 463 N.Y.S.2d 409, 450 N.E.2d 215, 216 (1983) (internal quotation and citation omitted). Equitable estoppel applies "if one party to the written contract 'has induced another's significant and substantial reliance upon an oral modification,' and if the conduct relied upon is 'not otherwise . . . compatible with the agreement as written.'" EMI Music Mktg. v. Avatar Records, Inc., 317 F. Supp. 2d 412, 421 (S.D.N.Y.2004) (quoting Rose, 397 N.Y.S.2d 922, 366 N.E.2d at 1283).

Here, the explicit language of the Note prohibits oral modifications. Moreover, the defendants' payment is in accord with the original agreement, and therefore does not unequivocally refer to the new agreement; nor is it incompatible with the agreement as written. Accordingly, any alleged oral modification sought by defendants is invalid.[4]

As of August 4, 2011, the amount of interest due and owing is $37,787.99. Multiplying the per diem rate of $80.26 by the number of days between August 4, 2011 and the date of this Report and Recommendation, January 4, 2012, which is 153, the amount of interest due and owing is $50,067.77. Accordingly, I recommend that plaintiff be granted interest in the amount of $50,067.77, with additional interest to be calculated through the date of judgment herein at a rate of $80.26 per day.

C. Late Fees

Late fees were assessed against G&M after ten days of delinquency at a rate of

---

[4] Because the Loan Documents specifically prohibit an oral modification of the Note, the production of any notes kept by Mr. St. Jean concerning the alleged oral modification is unnecessary and defendants' request for such discovery is accordingly denied.

five percent (5%) of the delinquent installment and incorporated into the mortgage debt pursuant to paragraph 2.8 of the Mortgage. (Pl. Ex. 2.) As of August 4, 2011, late fees totaled $7,489.60.[5]

Defendants challenge any late fees on the grounds that their July 21, 2009 payment of $42,680.00, which was applied to principal and interest only, was not used to reduce any late or miscellaneous fees, and Home Loan, in applying the payment in such a way, waived all late and miscellaneous fees. (Def. Mem. at pp. 3-4.) Since there is no documentary evidence to support such a waiver, discussed supra, and since the defendants' payment is in accord with the original agreement, no new agreement is implied. This is further confirmed by the testimony of Mr. St. Jean, who stated that it is not Home Loan's protocol to apply payments to late and miscellaneous fees. (Tr. pp. 46-47.)

As stated above, as of August 4, 2011, the late fees due and owing are $7,489.60. Late fees have continued to accrue at a rate of $189.60 per month since August 2011 and continue to accrue at that rate through the date of judgment herein. Accordingly, after calculating the late fees due from August 4, 2011 through the date of this Report and Recommendation, January 4, 2012 (five months), an additional $948.00 is due and owing in late fees, bringing the total amount of late fees to $8,437.60. I recommend that plaintiff be granted late fees in the amount of $8,437.60 with additional late fees to be calculated through the date of judgment at a rate of $189.60 per month.

D. Escrow Fees

Mr. St. Jean testified that Home Loan made several insurance premium payments

---

[5] Plaintiff's Amended Statement of Damages lists the total late fees due and owing as of August 4, 2011 as $7,488.89. However, plaintiff's math appears to be incorrect. The number set forth above appears to be the correct total due as of August 4, 2011.

on behalf of G&M to secure insurance for the mortgaged premises. (Tr. 13.) Those payments became debts owed to Home Loan and incorporated in the mortgage debt pursuant to paragraph 1.3(b) of the Mortgage. Mr. St. Jean testified that the escrow fees due and owing total $25,343.65. (Tr. 63.)

Defendants object to this amount, and claim that plaintiff has not proved that a payment of $8,050.00 was made as an insurance premium for defendants' property. (Def. Mem. p. 4.) Defendants argue that nothing on the copy of the check submitted into evidence by plaintiff indicates the check was submitted for insurance premiums paid on defendant's property. (Id; See Pl. Ex. 9.) Defendants also note that plaintiff's Exhibit 6, which are copies of G&M's account statements, contains no record of a payment made for $8,050.00.

In response, plaintiff has submitted both an account statement for G&M that shows an insurance premium amount of $8,050.00, and a copy of a check to an insurance company in that amount. (Pl. Ex. 9.) Together with Mr. St. Jean's sworn testimony, the Court finds the payment of $8,050.00 to be owed to Home Loan. Accordingly, I recommend that plaintiff be granted escrow fees in the amount of $25,343.65.

E.  Miscellaneous Fees

Miscellaneous fees of $1,359.00 were assessed against G&M and incorporated into the mortgage debt pursuant to paragraph 2.15 of the Mortgage. The fees represent payments for appraisals, property inspections, and processing of phone payments incurred in the enforcement of Home Loan's rights under the Mortgage. (Tr. 143.) Defendants raise the same argument in opposition to the miscellaneous fees that they do with respect to the imposition of late fees. (Def. Mem. p 3-4.) Again, the Court finds this unpersuasive. Accordingly, I

recommend that the plaintiff be granted miscellaneous fees in the amount of $1,359.00.

III.      Attorney's Fees and Costs

    A.      Attorney's Fees

Paragraph 6B of the Note grants Home Loan the right to recover from G&M all expenses incurred as a result of collection of the amounts due and owing under the Note. (Pl. Ex. 1 ¶ 6B.) Such expenses "may include . . . reasonable attorney's fees and costs." (Id.) Section 2.7 of the Mortgage provides for similar relief, calling for "costs and expenses [of collecting the debt] (including reasonable attorney's fees to the extent permitted by law)." (Pl. Ex. 2 § 2.7.) Likewise, paragraph 29B of the Security Agreement provides for the recovery of "any and all costs, expenses, and disbursements, including reasonable attorney's fees, incurred in connection with, or arising out of, the occurrence of an event of default . . . ." (Pl. Ex. 3 ¶ 29B.)

The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40 (1983). Defendants challenge both the hourly rates charged by plaintiff's counsel as well as the number of hours billed.

Defendants assert that the hourly rates of plaintiff's counsel are not reasonable. (Def. Mem. pp. 7-10.) Plaintiff seeks to recover attorney's fees at the following rates: (1) $575 per hour for John Toriello, a partner with thirty-three years of experience; (2) $515 per hour for Mark Michalowski, a partner with twenty-six years of experience; (3) $395 per hour for Patrick J. Sweeney, a senior associate with ten years of experience; (4) $255 per hour for Katherine Skeele,

a junior associate with two years of experience; (5) $260 per hour for Elvin Ramos, a staff member in the managing attorney's office; (6) $235 per hour for Glenn M. Huzinec, a legal assistant; (7) $210 per hour for Wallis B. Karpf, a legal assistant; and (8) $195 per hour for Shannan E. Whalen, also a legal assistant. The Court finds that the rates sought are unreasonable.

While plaintiff suggests that case law confirms that the rates charged are "in line, if not below those of other New York law firms," it draws this conclusion by citing cases from the Southern District of New York rather than the Eastern District of New York, where this action is pending. (Letter of Patrick J. Sweeney, dated Aug. 29, 2011.) For determining reasonable legal fees, the relevant legal community is generally the district in which the court is located. See Brady v. Wal-Mart Stores, Inc., No. 03-CV-3843, 2010 U.S. Dist. LEXIS 115380, at *9 (E.D.N.Y. Oct. 29, 2010) (citing Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997)) (additional citation omitted). Plaintiff cites several cases from the Southern District of New York in an attempt to present the hourly rates sought herein as reasonable. While a court may use an out-of-district rate if it is clear a reasonable client would pay such a rate, the presumption is that a paying client would hire counsel whose rates are consistent with those in the district in which the action is pending. See Brady, 2010 U.S. Dist. LEXIS 115380, at *10 (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 191 (2d Cir. 2008)). The presumption may be rebutted if the party seeking to recover a higher hourly rate demonstrates that "a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Simmons v. N.Y. City Transit Auth., 575 F.3d at 175 (2d Cir. 2009). While the attorneys who worked on this

matter are no doubt competent in this field, plaintiff has put forth no evidence that its counsel was likely to produce a substantially better net result in this simple mortgage foreclosure action than that of counsel that could have been retained in the Eastern District of New York. Therefore, the Eastern District of New York rates are applied.

In the Eastern District of New York, reasonable hourly rates are $200-$400 per hour for partners, $175-$295 per hour for senior associates, $100-$200 per hour for junior associates and $75 per hour for legal assistants. See Concrete Floatation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319, 2010 U.S. Dist. LEXIS 60560, at *14-15 (E.D.N.Y. Mar. 15, 2010) (collecting cases); see also Olsen v. County of Nassau, No. CV-05-3623, 2010 U.S. Dist. LEXIS 5915, at *14-15 (E.D.N.Y. Jan. 26, 2010) (determining reasonable hourly rates to be $375-$400 for partners, $200-$250 for senior associates and $100-$175 for junior associates); Gutman v. Klein, No. 03-CV-1570, 2009 U.S. Dist. LEXIS 123057, at *8 (E.D.N.Y. Oct. 9, 2009) (approving rates of $300 to $400 for partners, $200 to $300 for senior associates, and $100 to $200 for junior associates). Lastly, the Court factors in the relative simplicity of this default judgment mortgage foreclosure action.

Based on the foregoing, I recommend that the hourly rates be adjusted as follows: (1) $325 per hour for Toriello; (2) $300 per hour for Michalowski; (3) $225 per hour for Sweeney; (4) $150 per hour for Skeele; (5) $75 per hour for Ramos; (6) $75 per hour for Huzinec; (7) $75 per hour for Karpf; and (8) $75 per hour for Whalen.[6]

---

[6] The Court notes that "it is customary in this circuit to reduce attorney's fees by fifty percent for travel time." Pennacchio v. Powers, No. 05 CV 985, 2011 WL 2945825, at *1 (E.D.N.Y. 2011); accord Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir.2008) (upholding fee award that included travel time calculated at half the usual hourly rate). Therefore, all travel time will be reduced by fifty percent of the billed rate. The Court takes

Defendants also challenge plaintiff's calculation based on the number of hours billed, which total 106.2. Attorney's fees must be "documented by contemporaneously created time records that specify, for each attorney, the date, hours expended, and the nature of the work done." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998). A party seeking attorney's fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Defendants assert that plaintiff has not met this burden. (Def. Mem. pp. 5-6, 10-12.) However, plaintiff has submitted invoices that detail the time expended by each individual timekeeper and the tasks they completed, which do in fact fulfill the contemporaneous time record requirement. (Pl. Ex. 7; Letter of Patrick J. Sweeney, dated Aug. 5, 2011; Letter of Patrick J. Sweeney, dated Aug. 30, 2011.) The Court finds the hours expended to be reasonable.

Accordingly, I recommend that plaintiff be awarded attorney's fees in the amount of $20,965.00.

B. Costs

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." Field Day, LLC v. County of Suffolk, No. CV 04–2203, 2010 WL 5491025, at *8 (E.D.N.Y. Sept. 9, 2010) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)); see also Larson v. JBC Legal Group, P. C., 588

---

judicial notice that it takes approximately three hours to travel to and from Central Islip from Manhattan. Accordingly, any billing entries that include travel time will be reduced by fifty percent for three billed hours.

F.Supp.2d 360, 365 (E.D.N.Y. 2008) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.") (internal quotation marks and citations omitted). "However, expenses which are part of the attorney's ordinary overhead are not to be reimbursed." SEC v. Goren, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (citing New York State Nat'l Org. for Women v. Terry, 737 F. Supp. 1350, 1363 (S.D.N.Y. 1990)).

The expenditures in the within action total $3,250.99 and include costs for online research, telephone calls, service of process, delivery and messenger services, court filing fees, title reports, facsimiles, photocopies and postage, all of which are routinely recoverable. See, e.g., Simmons v. N.Y. City Transit Auth., No. CV-02-1575, 2008 U.S. Dist. LEXIS 16949, at *22-23 (E.D.N.Y. Mar. 4, 2008) (finding costs relating to "filing fees, process servers, postage, travel and photocopying" to be reasonable expenditures for which plaintiff was entitled to reimbursement); Cho v. Koam Med. Servs., P.C., 524 F. Supp. 2d 202, 212 (E.D.N.Y. 2007) (reimbursing plaintiff for costs related to "Federal Express, reproduction, telephone, facsimile, postage, deposition services, [and] deposition/hearing transcripts" as well as legal research); Int'l Consulting Servs., Ltd. v. Cheap Tickets, Inc., No. 01-CV-4768, 2007 U.S. Dist. LEXIS 71689, at *26 (E.D.N.Y. Sept. 12, 2007) (finding costs related to electronic research reasonable and awarding costs requested); Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for costs relating to "photocopying, filing fees, Federal Express, [and] trial exhibits").

As stated above, however, recovery is not permitted for those expenditures associated with "routine office overhead." Molefi v. Oppenheimer Trust, No. 03 CV 5631, 2007 U.S. Dist.

LEXIS 10554, at *25 (E.D.N.Y. Feb. 15, 2007) (quoting Pinner v. Budget Mortgage Bankers, Ltd., 336 F. Supp. 2d 217, 222 (E.D.N.Y. 2004)). Rather, such costs must be "absorbed within the attorney's hourly rate." Fink v. City of New York, 154 F. Supp. 2d 403, 415 (E.D.N.Y. 2001) (quoting Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987)). Here, defendant seeks to recover $37.09 for tabs and velobinding. Such expenses are not recoverable and should therefore denied. See, e.g., Close-Up Int'l, Inc. v. Berov, No. 02-CV-2363, 2007 U.S. Dist. LEXIS 83972, at *33 (E.D.N.Y. Dec. 13, 2007) (finding that expenses for trial exhibit binders and tabs "are not properly reimbursable, because they are considered to be part of a law firm's overhead that is already paid for in the attorney's fees") (citations omitted); Lavely v. Redheads, Inc., No. 03 Civ. 7752, 2007 U.S. Dist. LEXIS 77109, at *24-25 (S.D.N.Y. Oct. 12, 2007) (recommending that the court deny recovery for velobinding); Vernon v. Port Authority, 220 F. Supp. 2d 223, 232 (S.D.N.Y. 2002) (denying recovery for binder tabs on the ground that such expenses "fall under either the category of overhead costs or supplies, neither of which is compensable") (citations omitted); Barrett v. United States, Nos. 76 Civ. 381, 76 Civ. 1061, 1991 U.S. Dist. LEXIS 4626, at *21 (S.D.N.Y. Apr. 9, 1991) (finding that velobinding is considered an "overhead expense" and disallowing recovery for it).

With the exception of the expenses listed for tabs and velobinding, the Court finds the expenses to be reasonable and recommends that plaintiff be awarded costs in the amount of $3,213.90.

RECOMMENDATION

For the foregoing reasons, the Court recommends that a default judgment be entered against defendants Goodness & Mercy, Inc., Mary Gilliam and Harriet A. Gilliam, and that plaintiff be awarded damages as follows: (1) $509,460.35 in principal that is owed under the Note and Mortgage; (2) $50,067.77 in interest, with additional interest to be calculated through the date of judgment at a rate of $80.26 per day; (3) $8,437.60 in late fees, with additional late fees to be calculated through the date of judgment at a rate of $189.60 per month; (4) $25,343.65 in escrow fees; (5) $1,359.00 in miscellaneous fees; (6) $20,965.00 in attorney's fees; and (7) $3,213.90 in costs, for a total monetary award of $618,847.27, plus additional interest and late fees calculated through the date of judgment entered herein.

OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
       January 4, 2011

                                                  /s/ E. Thomas Boyle
                                                  E. THOMAS BOYLE
                                                  United States Magistrate Judge