**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X
HOME LOAN INVESTMENT BANK, F.S.B.,
f/k/a OCEAN BANK, F.S.B.,

                             Plaintiff,

           -against-

GOODNESS AND MERCY, INC.; MARY
GILLIAM, HARRIET A. GILLIAM, NEW YORK
STATE DEPARTMENT OF TAXATION &
FINANCE, NEW YORK STATE WORKERS'
COMPENSATION BOARD, THE UNITED
STATES OF AMERICA, CAPITAL ONE BANK
(USA), N.A. and JOHN DOE Nos. 1-100,

                             Defendants.
-------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-CV-4677 (ADS) (ETB)

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   MAR 3 0 2012   ★

LONG ISLAND OFFICE

**APPEARANCES:**

**Holland & Knight, L.L.P.**
*Attorneys for the plaintiff*
31 West 52nd Street, 12th Floor
New York, NY 10019
        By:  John Michael Toriello, Esq.
                Patrick J. Sweeney, Esq., Of Counsel

**Law Office of Harriet A. Gilliam**
*Attorney for Goodness & Mercy, Inc., Mary Gilliam & Harriet Gilliam*
P.O. Box 1485
711 Union Avenue
Riverhead, NY 11901
        By:  Harriet A. Gilliam, Esq. *pro se*

**NO APPEARANCE**
New York State Department of Taxation & Finance
New York State Workers' Compensation Board
The United States of America
Capital One Bank USA, N.A.
John Doe Nos. 1-100

1

**SPATT, District Judge**

Presently before the Court are objections to a Report and Recommendation of United States Magistrate Judge E. Thomas Boyle dated January 4, 2012 addressing the calculation of damages in the above-captioned litigation between Home Loan Investment Bank ("Home Loan" or "the Plaintiff"), and Goodness & Mercy, Inc. ("G&M"), Mary Gilliam, and Harriet Gilliam ("the Defendants").  For the reasons set forth below, the Court accepts in part and modifies in part Judge Boyle's Report.

## I. BACKGROUND

The facts of this case are fully set forth in this Court's previous decision denying the Defendants' motion to vacate the entry of default, see Home Loan Investment Bank, F.S.B. v. Goodness & Mercy, Inc. ("Home Loan I"), No. 10-CV-4677, 2011 WL 1701795 (E.D.N.Y. April 30, 2011), as well as Judge Boyle's Report and Recommendation dated January 4, 2012 ("the Report").  (Docket Entry # 41.)  The Court assumes the parties familiarity with the facts and procedural history of this case.

In short, the Plaintiff commenced this mortgage foreclosure and deficiency judgment action on October 13, 2010, against the Defendants based on the Defendants alleged default under the terms of various agreements securing a Small Business Administration ("SBA") loan in the amount of $525,000.

Pursuant to the decision in Home Loan I denying the Defendants' motion to vacate the default, the Court entered a default and referred this matter Judge Boyle for an inquest as to damages, including reasonable attorneys' fees and costs and any other additional relief.  Judge Boyle held a hearing on August 9, 2011 ("the Hearing").  At the Hearing, the Plaintiff presented the testimony of Peter R. St. Jean, the commercial workout manager for Home Loan and Patrick

2

J. Sweeney, counsel for the Plaintiff. Entered into evidence at the Hearing were the following documents: (1) Small Business Administration Note executed on December 15, 2006 by G&M in favor of Home Loan for $525,000 ("the Note"); (2) Mortgage and Security Agreement executed on December 15, 2006 by G&M, creating a mortgage lien in favor of Home Loan in the property known as 67 East Main Street, Riverhead, NY 11901 ("the Mortgage") ; (3) Collateral Mortgage and Security Agreement executed on December 15, 2006 by Mary Gilliam in favor of Home Loan ("the Collateral Mortgage"); (4) Running record of all transactions associated with the loan ("the loan transcript"); (5) invoices for all miscellaneous fees including property appraisals/inspections/taxes; use of phone pay system; and legal fees and costs; (6) Escrow account statement representing insurance premium payments made by Home Loan on behalf of the Defendants to secure insurance for the mortgaged premises; (7) Printout of Prime Rate used to determine the applicable interest rate for the loan; (8) Survey of Billing Rates to support the request for legal fees; and (9) three letters reflecting correspondence between the Plaintiffs and the Defendant post-dating the commencement of the instant action.

At the direction of Judge Boyle, subsequent to the hearing, the Plaintiff submitted the Declaration of Peter R. St. Jean in Support of Home Loan Investment Bank's Statement of Damages, attaching an invoice and check evidencing a $8,050 payment ("St. Jean Declaration") and the Declaration of Patrick Sweeney addressing the Plaintiff's request for attorneys' fees. In addition, both parties submitted supplemental memoranda addressing issues raised at the hearing, including: (1) the proper calculation of the amount due under the subject note and mortgage; (2) whether Judge Boyle should permit discovery of Mr. St. Jean's notes concerning a conversation that he purportedly had with Harriet Gilliam regarding a $42,680 lump sum payment; and (3) the calculation of attorneys' fees.

3

On January 4, 2012, Judge Boyle issued the Report, recommending that the Court grant

the default judgment and award the Plaintiff the following damages:

> (1) $509,460.35 in principal that is owed under the Note and Mortgage;
> (2) $50,067.77 in interest, with additional interest to be calculated
> through the date of judgment at a rate of $80.26 per day; (3) $8,437.60 in
> late fees, with additional late fees to be calculated through the date of
> judgment at a rate of $189.60 per month; (4) $25,343.65 in escrow fees;
> (5) $1,359.00 in miscellaneous fees; (6) $20,965.00 in attorney's fees;
> and (7) $3,213.90 in costs, for a total monetary award of $618,847.27,
> plus additional interest and late fees calculated through the date of
> judgment entered herein.

(Report at 17.)

The Defendants filed timely objections to the Judge Boyle's Report and the Plaintiff filed

a timely response to the Defendants' objections.

## II. DISCUSSION

### A.  Standard of Review

A court is required to make a de novo determination as to those portions of the report and

recommendation to which objections were made. 28 U.S.C. § 636(b)(1)(C); Grassia v. Scully,

892 F.2d 16, 19 (2d Cir. 1989). The phrase " de novo determination" in Section 636(b)(1)—as

opposed to "de novo hearing"—was selected by Congress "to permit whatever reliance a district

judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed

findings and recommendations." United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406,

65 L. Ed. 2d 424 (1980). Section 636 does not require a court "to rehear the contested testimony

in order to carry out the statutory command to make the required 'determination.'" Id. at 674,

100 S. Ct. 2406. Rather, in making such a determination, a court may in its discretion review the

record and hear oral argument on the matter. See Pan Am. World Airways, Inc. v. Int'l Bhd. of

Teamsters, 894 F.2d 36, 40 n. 3 (2d Cir. 1990). Furthermore, a court may in its sound discretion

afford a degree of deference to the magistrate judge's report and recommendation. See Raddatz, 447 U.S. at 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424.

In a case where a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). "Furthermore, even in a *de novo* review of a party's specific objections, the Court ordinarily will not consider arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance." Fairfield Fin. Mortg. Group, Inc. v. Luca, No. 06-CV-5962, 2011 WL 3625589, at *2 (E.D.N.Y. Aug. 16, 2011) (internal quotation marks omitted).

The Defendants main objection centers on a $42,680 lump sum payment by the Defendants on July 21, 2009, of which the Plaintiff allocated $35,238.73 to reduce interest and $7,441.27 to reduce the principal. The Defendants maintain that, in a July 21, 2009 conversation between Mr. St. Jean and Harriet Gilliam, Mr. St. Jean agreed, that in exchange for the lump sum payment, the Plaintiff "would grant an SBA waiver of three months on the payment of the loan" and waived all of the interest and late fees due and owing under the Note. (Pl.'s Obj. at 13.) As a result, the Defendants argue that the principal, interest, and late fee calculations should be substantially reduced. The Defendants further object to Judge Boyle's decision not to require the Plaintiff to produce the written notes of the July 21, 2009 conversation between Mr. St. Jean and Harriet Gilliam and his subsequent decision to calculate damages based on the assumption that the $42,680 lump sum payment was a "single installment payment" under the Note, rather than consideration for an oral modification of the Note.

5

In addition, the Defendants contend that Judge Boyle erred in awarding the Plaintiff: (1) compound interest; (2) post-acceleration late fees; (3) $8,050 in escrow fees; and (4) attorneys' fees at the requested amount. The Court addresses each of these objections in turn.

## B.  Whether an Alleged Oral Modification of the Note Alters the Award of Damages

The Defendants contend that, in a July 21, 2009 conversation between Harriet Gilliam and Mr. St. Jean, the Plaintiff agreed that, in exchange for a lump sum payment of $42,680, the Defendant would waive all existing interest and late fees. This would result in a further reduction of principal, and corresponding reduction in the amount of late fees and interest currently due and owing based on the Defendants' default. The Defendants argue that Judge Boyle erred in calculating the applicable damages by failing to: (1) consider exceptions to the rule enforcing no-oral modification clauses and grant their request for the discovery to support those exceptions and (2) take into account equitable considerations when a lender has acted in bad faith as required by New York law.

### 1. Oral Modification

Section 3 of the Note provides that the "Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal." (Pl. Ex. 1.) Mr. St. Jean, testified at the hearing that the $42,680 payment was allocated in accordance with the standard practices as expressed in the Note, and thus $35,238,73 was applied first, to interest owed, and $7,441.27 was applied second to the principal. (Tr. 46–47.). The Plaintiff admits that its employee, Mr. St. Jean, had a conversation with Harriet Gilliam with respect to this payment. According to Mr. St. Jean, the purpose of the large payment was "to eliminate arrearage", thereby "eliminate[ing] the delinquency on the loan". (Tr. at 46.) Mr. St. Jean testified that he

6

did not recall any other representations being made in connection with the lump sum payment,
although he admitted that there may be additional information contained in his notes. The
Defendants requested that the Plaintiff be required to produce Mr. St. Jean's notes of the
conversation in order to support their argument that the terms of the Note had been orally
modified.

Following additional briefing on the issue, Judge Boyle denied the Defendants request for
Mr. St. Jean's notes, stating that:

> Because the Loan Documents specifically prohibit an oral modification
> of the Note, the production of any notes kept by Mr. St. Jean concerning
> the alleged oral modification is unnecessary and defendants' request for
> such discovery is accordingly denied.

(Report at 8 n.4.)

Section 9E of the Note explicitly states that "Borrower may not use an oral statement of
Lender or SBA to contradict or alter the written terms of this Note." (Pl. Ex. 1 § 9E.) New York
General Obligations Law § 15-301 provides that "[a] written agreement or other written
instrument which contains a provision to the effect that it cannot be changed orally, cannot be
changed by an executory agreement unless such executory agreement is in writing and signed by
the party against whom enforcement of the change is sought or by his agent." A party can
overcome a no-oral-modification clause by showing either partial performance or equitable
estoppel. See United States v. Schwimmer, 968 F.2d 1570, 1575 (2d Cir. 1992); John Street
Leasehold LLC v. F.D.I.C., 196 F.3d 379, 382 (2d Cir. 1999).

To rely on the partial performance exception, "that partial performance must be
'unequivocally referable' to the new contract." Merrill Lynch Interfunding v. Argenti, 155 F.3d
113, 122 (2d Cir. 1998) (quoting Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 397 N.Y.S.2d 922,

366 N.E.2d 1279, 1283 (1977)); see also Tierney v. Capricorn Investors, L.P., 189 A.D.2d 629,

631, 592 N.Y.S.2d 700, 703 (1st Dep't 1993).

 Here, the Defendants performance—i.e. the $42,680 lump sum payment—would be

equally consistent with their desire to eliminate the delinquency of the loan.  The law is clear that

to be "unequivocally referable," "the action taken must be unintelligible or at least extraordinary,

explainable only with reference to the oral agreement."  Merrill Lynch, 155 F.3d at 122 (internal

quotation marks and citation omitted); see also Anostario v. Vicinanzo, 59 N.Y.2d 662, 463

N.Y.S.2d 409, 450 N.E.2d 215, 216 (1983).  Although the Defendants argue that they would

never have made such a large payment under the terms of the original agreement, the Court

agrees with Judge Boyle that "the defendants' payment is in accord with the original agreement,

and therefore does not unequivocally refer to the new agreement".  (Report at 8.)

 As to the second exception, equitable estoppel only applies "if one party to the written

contract 'has induced another's significant and substantial reliance upon an oral modification,'

and if the conduct relied upon is 'not otherwise . . . compatible with the agreement as written.' "

EMI Music Mktg. v. Avatar Records, Inc., 317 F.Supp.2d 412, 421 (S.D.N.Y. 2004) (quoting

Rose, 397 N.Y.S.2d 922, 366 N.E.2d at 1283) (emphasis added).  Although Mr. St. Jean's notes

may have revealed conduct inducing the Defendants reliance upon the purported oral

modification, the Defendants cannot avail themselves of this exception because their conduct

was compatible with the agreement as written.  The Defendants alleged reliance, in making a

loan payment, is consistent with their obligations under the Note, and with what they agreed to

do when they took out the loan.  Thus, the Court affirms Judge Boyle's decision to deny the

Defendants' request for the discovery of Mr. St. Jean's notes and his finding that the damages

calculation should be based on amounts reflected in the loan transcript and other relevant documents without any regard to the purported oral modification.

## 2. Equitable Considerations

According to the Defendants, even assuming the Note could not be orally modified, equitable considerations require a reduction in the damages awarded because the Plaintiff acted in bad faith in procuring the $42,680 lump sum payment, which created a severe hardship on the Defendants.

A mortgage foreclosure is an equitable remedy, and under New York law ". . . in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion". N.Y. C.P.L.R. § 5001(a) (McKinneys 2007). A court's exercise of that discretion is "governed by the particular facts in each case, including any wrongful conduct by either party". Danielowich v. PBL Dev., 292 A.D.2d 414, 415, 739 N.Y.S.2d 408, 409 (2d Dep't 2002).

The Defendants argue that the Plaintiff "has not engaged in fair dealing with the defendants in terms of [i]t's discretion to apply excess escrow funds; its discretion in applying the lump sum payment of $42,680.00 and in its failure to even respond to Judge Boyle's strong suggestion of certifying to the Court whether or not Mr. St. Jean had records attesting to the oral agreement between the parties relative [to] the $42,680.00 lump sum payment". (Def.'s Obj. at 6–7.) The Defendants have offered nothing beyond this conclusory statement that the Plaintiff somehow acted wrongfully by failing to exercise "its discretion" in allocating the escrow funds and lump sum payment. Furthermore, while Judge Boyle may have suggested that the Plaintiff attest to whether Mr. St. Jean had notes regarding the alleged oral conversation with Harriet Gilliam, Judge Boyle also made clear that it was within the Plaintiff's discretion whether to make

9

such a representation, or simply argue that the notes were irrelevant. The Court finds no

wrongful conduct in the Plaintiff choosing to allocate the $42,680 lump sum payment consistent

with the terms of the Note, nor any wrongful conduct in its decision to oppose the discovery as

irrelevant, rather than making any representation as to the existence of any notes. Accordingly,

the Court finds that equitable considerations do not warrant a departure from the damages award

recommended by Judge Boyle.

## C. Whether the Plaintiff is Entitled to an Award of Compound Interest

The Defendants argue that Judge Boyle erred in calculating the interest at a compound

rate because neither the Note nor the Mortgage Agreement "expressly" provide for compound

interest. Because the Defendants did not raise this argument before Judge Boyle, the Plaintiff

contends that the Defendants waived this objection. As a result, the Plaintiff did not submit any

arguments in opposition to the Defendants contention that the Note does not provide for interest

compounded on a daily rate.

As explained by the New York Court of Appeals:

> Compound interest is commonly defined as "interest on interest" or
> interest that is "paid on *both* the principal and the previously
> accumulated interest" (Black's Law Dictionary 817 [7th ed 1999]
> [emphasis added]). This contrasts with simple interest, which is "paid on
> the principal *only* and not on accumulated interest" (id. [emphasis
> added]). The difference between these two formulations is that simple
> interest does not merge with principal and thus does not become part of
> the base for the computation of future interest.

Spodek v. Park Prop. Dev. Ass'n, 96 N.Y.2d 577, 580, 759 N.E.2d 760, 761, 733 N.Y.S.2d 674,

675 (2001) (emphasis in original). The Court does not understand, nor do the Defendants

explain, why the Defendants believe they are being charged a compound interest rate. At the

hearing, Mr. St. Jean testified that he calculated simple interest on the principal balance. (Tr. at

12.) As set forth in the Note, the interest rate applicable to the loan is the prime rate, plus 2.5%,

adjusted quarterly and compounded as daily simply interest.  Consistent with this testimony, and the language in the Note, Judge Boyle determined that the Plaintiff was entitled to interest at a rate of $80.26 per day.  That this recommendation is based on simple interest, and not compounded interest, is supported by simple arithmetic.  The outstanding principal on the Note is $509,460.35.  As indicated in the loan transcript, the current applicable interest rate is 5.75%, thus: $509,460.35 X 5.75 / 365 days = $80.26.  The Court also finds that, based on the information provided by the Plaintiff showing the Defendants payment history, and the documents provided stating the applicable interest rates during the term of the loan, the Plaintiff met its burden of showing how it arrived at the requisite interest amount.

The Court finds no error in Judge Boyle's decision and affirms Judge Boyle's award of interest.

**D.  Whether the Plaintiff is Entitled to Post-Acceleration Late Fees**

The Defendants argue that Judge Boyle also erred in awarding the Plaintiff certain late fees because post-acceleration late charges are contrary to New York law.  Again, because this argument was not raised before Judge Boyle, the Plaintiff considered it to be waived and did not interpose a response.

Under New York law, "[i]n the absence of a provision in the mortgage to the contrary, the collection of late fees after a mortgage note has been accelerated is impermissible".  Carreras v. Weinreb, 33 A.D.3d 953, 955, 826 N.Y.S.2d 72, 74 (2d Dep't 2006); Rizzo v. Pierce & Assocs., 351 F.3d 791, 793 n.1 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated").  The basis for this general rule against awarding post-acceleration late charges is that it is "inconsistent to allow a lending institution to accelerate a note, thereby

11

denying the debtor the right under the mortgage note to make monthly installments and to continue to insist on its own right under the note to impose monthly late charges". Green Point Sav. Bank v. Varana, 236 A.D.2d 443, 453, 653 N.Y.S.2d 656, 657 (2d Dep't 1997) (quoting Centerbank v. D'Assaro, 158 Misc. 2d 92, 95, 600 N.Y.S.2d 1015 (N.Y. Sup. Ct. 1983); see also Lasalle Bank Nat. Ass'n v. Shepherd Mall Partners, L.L.C., 140 P.3d 559, 562 (Okla. Civ. App. 2005) (noting that "the right to charge late fees ceases upon acceleration because monthly payments are not due after acceleration, so the lender no longer incurs expenses in processing delinquent payments"); cf. Rizzo, 351 F.3d at 793–94 (upholding the imposition of late fees after acceleration because the plaintiffs reinstated their mortgage after acceleration and therefore monthly payments remained due).  As articulated by Judge Weil in In re Guarnieri, 297 B.R. 365 (Bankr. Conn. 2003):

> [t]he underlying logic of these cases is simple: once the borrower is in default and the loan is accelerated, the full amount of the loan becomes due immediately, and there remains no obligation by the borrower to continue making monthly payments. In the absence of an obligation to make monthly payments, payments cannot be "late."

Id. at 369; see also Centerbank v. D'Assaro, 158 Misc. 2d 92, 95, 600 N.Y.S.2d 1015, 1017 (N.Y. Sup. Ct. 1993) (holding that notwithstanding the fact that the language in the note identified the purpose of the late charge provision as "covering the expense resulting from handling such delinquent payment before and after maturity, including accelerated maturity", because the debtor's right and obligation to make monthly installment payments ceased after the debt was accelerated, a failure to make such payments could not be considered delinquent).

To determine whether a note provides for late fees after a mortgage note has been accelerated, courts look to the stated purpose of the late fee provision in the note.  For example, courts will award late fees after acceleration where the note expressly provides for late fees as an

12

additional form of damages following acceleration. See Orix Credit Alliance, Inc. v. Bell Realty, Inc., No. 93-CV-4949, 1995 WL 505891, at *9, *9 n.14 (S.D.N.Y. Aug. 23, 1995) (awarding late fees that accrued after acceleration upon finding that "the Note unequivocally provides for the imposition of late charges after default and acceleration" where the Note stated in no uncertain terms that late charges would continue to accrue after acceleration "calculated at one-fifteenth of 1% per day but not to exceed any maximum permitted by applicable law").

By contrast, where the language of the note provides for late charges on payments after default as a form of covering the expense of collecting the debt, but does not indicate that the late charges continue to accrue after acceleration, courts have stopped the calculation of late fees at the date of acceleration, which typically coincides with the service of the Summons and Complaint. See Centerbank, 158 Misc. 2d at 94, 600 N.Y.S.2d at 1017 (holding that based on the language of the note, the plaintiff was "entitled to all outstanding amounts which were due as of the date at which the declaration of default and demand was made", which the court identified as the date that the plaintiff served the Summons and Complaint because such service "formally accelerated the payment of the debt and repudiated the right of the defendant to make installment payments"); Gizzi v. Hall, 309 A.D.2d 1140, 767 N.Y.S.2d 469 (3d Dep't 2003) (holding that defendants were entitled to late charges that could be collected under the note for each late payment "until the time that defendants exercised the acceleration option by asserting it in their counterclaim").

Based on the Court's review of the Note and the Mortgage, the Court finds that the Plaintiff is not entitled to post-acceleration late fees. Accordingly, the Court modifies Judge Boyle's award of late charges to only include the late charges which accrued prior to the commencement of the foreclosure action.

13

**E.  Whether the Plaintiff is Entitled to an Additional $8,050 in Escrow Fees**

At the August 9, 2011 hearing, the Plaintiff was unable to provide documentation with respect to a miscellaneous payment in the amount of $8,050, which the Plaintiff contended it made as an insurance premium payment on behalf of G&M to secure insurance for the mortgaged premises. Subsequent to the hearing, at Judge Boyle's request, the Plaintiff submitted both an account statement for G&M that shows an insurance premium amount of $8,050, and a copy of a check to an insurance company in that amount. (See St. Jean Declaration, Docket Entry # 29.)  Based on this documentary evidence and the testimony of Mr. St. Jean, Judge Boyle found that the $8,050 amount was an escrow fee owed to the Plaintiff.  The Court finds the Defendants objection to this award to be without merit.  The documentary evidence is sufficient to satisfy the Plaintiff's burden that it is entitled to these funds.  Furthermore, while the Defendants object to the Plaintiff's decision to place the funds in escrow rather than refund the money to the Defendants, the Defendants admit that this allocation decision was within the Plaintiff's discretion. (Defs.' Obj. at 21.)  Accordingly, the Court affirms Judge Boyle's award of escrow fees in the amount of $25,343.65.

**F.  Whether the Plaintiff is Entitled to the Full Amount of Recommended Attorneys' Fees**

In the Report, Judge Boyle made the following recommendations with respect to attorneys' fees.  First, Judge Boyle recommended that fees be calculated at the following hourly rates:  (1) $325 per hour for John Toriello; (2) $300 per hour for Mark Michalowski; (3)$225 per hour for Patrick J. Sweeney; (4) $150 per hour for Katherine Skeele; (5) $75 per hour for Elvin Ramos; (6) $75 per hour for Glenn M. Huzinec; (7) $75 per hour for Wallis B. Karpf and (8) $75 per hour for Shannan E. Whalen.  With respect to the number of hours billed, the Plaintiff submitted invoices for a total of 106.2 hours worked.  Although the Defendants objected to the

14

number of hours billed, Judge Boyle "f[ound] the hours expended to be reasonable" and recommended an award of attorneys' fees in the amount of $20,965. (Report at 14.)

In the Second Circuit, attorney's fees are determined by calculating the "presumptively reasonable fee". Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117–18 (2d Cir. 2007), amended on other grounds, 522 F.3d 182 (2d Cir. 2008). The "presumptively reasonable fee" is "comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours". Finkel v. Omega Commc'n Servs., Inc., 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing Arbor Hill, 522 F.3d at 189); see Cruz v. Local Union No. 3 of the Int'l Bd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). In assessing the presumptively reasonable fee, the Second Circuit has instructed that courts should consider the factors articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974). See Arbor Hill, 522 F.3d at 190. As summarized by the Second Circuit, the Johnson factors relevant to a court's consideration are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3 (citing Johnson, 488 F.2d at 717–19).

Here, the Defendants do not object to the reasonable hourly rate, and the Court agrees with Judge Boyle's assessment of the reasonable hourly rates for the various attorneys and support staff. However, the Defendants do object to the calculation of the reasonable hours expended.

After determining the reasonable hourly rate, a court must evaluate the number of hours reasonably billed in order to arrive at the presumptively reasonable fee. Arbor Hill, 522 F.3d at 189–90. In reviewing voluminous fee applications, it is unrealistic to expect courts to "evaluate and rule on every entry in an application." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983). Thus, the Court will only evaluate those areas to which the Defendant has objected.

The Defendants argue that Judge Boyle erred in calculating the hours that the Plaintiff's attorneys reasonably expended in litigating this action because he awarded fees for certain "unnecessary work" despite his acknowledgment that this matter was a "simple mortgage foreclosure action". (Report at 13.) The following constitute the Defendants objections.

First, the Defendants objects to 4.7 hours of work between March 2009 and July 2009, which predated the declaration of default by one year, and the commencement of the foreclosure action by more than a year and half. Under the terms of the loan documents, the Plaintiff is entitled to attorneys fees for work that pre-dates the foreclosure proceeding or the formal declaration of default. Notably, as the Plaintiff points out, "Defendants do not dispute that the fees in question were incurred following their default on the loan . . . ." (Pl.'s Opp. at 10.)

The Defendants remaining objections are similarly without merit. The Defendants object to:

> (1) 12.10 hours of work between July 1, 2010 and August 4, 2010 relating to the preparation of the complaint in the instant action because 12.10 hours is excessive to prepare a complaint in a "simple foreclosure action";

16

(2) 40.1 hours of work billed in preparation for the June 21, 2011 hearing that was adjourned and the August 9, 2011 hearing because these entries are vague as to what constituted "preparation" and are inconsistent with a "simple foreclosure action";

(3) 2.7 hours of work on June 3, 2011 and June 6, 2011 for the preparation of a declaration of Mr. St. Jean to be submitted in lieu of his testimony because this work was unnecessary;

(4) 6.8 hours of work on June 13, 2011 and June 14, 2011 in researching the prime rate because this work was duplicative; and

(5) 1.8 hours worked in preparing the motion for a default judgment because the motion was being prepared on the same day that the Defendants' counsel had contacted the Plaintiff's counsel for an extension of time to respond.

(Defs.' Obj. at 17–20.) The Court finds that, despite the simple nature of this foreclosure action, these hours are reasonable, particularly in light on the numerous attempts by the Plaintiff to resolve this issue, which was often prolonged and unnecessarily complicated by the Defendants lack of cooperation and communication. Accordingly, the Court affirms Judge Boyle's finding that the Plaintiff is entitled to attorneys' fees for all of the invoiced hours.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Judge Boyle's Report and Recommendation is accepted in part and modified in part as set forth herein. The Court grants the default judgment, and awards the Plaintiff: (1) $509,460.35 in principal that is owed under the Note and Mortgage; (2) $50,067.77

17

in interest, with additional interest to be calculated through the date of judgment at a rate of

$80.26 per day; (3) $25,343.65 in escrow fees; (4) $1,359.00 in miscellaneous fees; (5)

$20,965.00 in attorney's fees; and (6) $3,213.90 in costs, and it is further

**ORDERED**, that the Plaintiff is directed to submit to the Court within ten days of the

date of this order, a calculation of the late fees accrued up to the date of the commencement of

the foreclosure action, and it is further

**ORDERED**, that the Plaintiff is afforded ten days from the date of this order to either

move for a default judgment against the remaining defendants or the Court may dismiss the

remaining defendants for failure to prosecute pursuant to Federal Rule of Civil Procedure 41.

**SO ORDERED.**
Dated: Central Islip, New York
March 30, 2012

　　　　　　　　　　　　　　　_/s/ Arthur D. Spatt_____
　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　United States District Judge